IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADAM LOOMIS,

      Plaintiff,

v.                                                     Civ. No. 11-1007 LFG/ACT

I-FLOW CORPORATION,
I-FLOW, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant I-Flow, LLC's ("I-Flow") Motion for Entry of a Protective Order [Doc. 50] filed October 15, 2012 ("Motion") and I-Flow's [Proposed] Stipulated Qualified Protective Order [Doc. 51] filed October 16, 2012. Plaintiff filed his Response Brief in Opposition to I-Flow, LLC's Motion for Entry of a Protective Order [Doc. 53] on October 30, 2012 ("Response"). The Reply of I-Flow, LLC in Support of Its Motion for Entry of a Protective Order [Doc. 55] was filed on November 13, 2012 ("Reply"). The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised, finds that I-Flow's Motion is well taken and will be GRANTED.

### INTRODUCTION

This products liability case arises from Plaintiff's claim that his surgeon's decision to use an I-Flow continuous infusion therapy device following arthroscopic shoulder surgery caused him to suffer a personal injury. [Doc. 50, p. 1.] Plaintiff alleges that I-Flow's device was defectively designed and that I-Flow failed to warn him or his surgeon regarding the alleged risk of the development of a condition known as chondrolysis, the rapid and global loss of cartilage

in his shoulder joint. [Doc. 50, p. 1; Doc. 53, p. 1.] Plaintiff's lawsuit against I-Flow is similar to numerous other lawsuits filed against I-Flow involving the identical defect and damage claims throughout the United States. [Doc. 50, p. 4, Doc. 53, p. 1.] In order to facilitate discovery, the parties negotiated and appear to have agreed to all of the provisions of a Stipulated Qualified Protective Order ("Protective Order") with the exception of the "Sharing Provision" in section 10 of the Protective Order.[1] I-Flow proposed a Sharing Provision that limits sharing confidential and trade secret documents and information to the parties and a list of designed individuals who have some role in this case. [Doc. 51, p. 4-5, ¶ 10 (a) – (g).] Plaintiff contends that I-Flow has not shown good cause for a protective order and, in the alternative, offers a version of the protective order that includes the following:[2]

> 10. No person subject to this Order other than the designating party shall disclose any Confidential Discovery Material to any other person, except as follows: . . .
>
> (h) Counsel representing similarly situated claimants against the Defendant in actions alleging personal injuries caused by the use of a pain pump designed, sold, manufactured or distributed by Defendants. Such counsel must first agree to sign and be bound by this Order. [Doc. 53-1, pp. 4 – 6.] ("Section 10(h)".)

---

[1] Plaintiff emphatically argues that he did not agree to the Protective Order. [Doc. 53, p. 2.] Instead, Plaintiff claims a protective order is not necessary in this case. *Id.* This argument is undermined by emails exchanged by the parties' counsel wherein Plaintiff's counsel proposes changes to the protective order and states "[o]therwise, we are ok with the order." [Doc. 55-1.] Further, Plaintiff attaches his version of a Stipulated Qualified Protective Order to his Response that is identical to the Protective Order submitted by I-Flow except it includes Section 10(h) and a self-authentication provision not in the Protective Order submitted by I-Flow. [Doc. 53-1, pp. 5 and 8.] It is unclear to the Court whether Plaintiff previously proposed the self-authentication provision. As it is not in the Protective Order submitted by I-Flow, it appears I-Flow has not agreed to such a provision. It is apparent, however, that the parties have agreed to the terms of the Protective Order with the exception of the Sharing Provision and self-authentication provision. Nonetheless, "[t]hat the parties all agree to the requested protective order does not dispense with the requirement to show good cause. The 'law requires' the court to make a determination of good cause, before entering a protective order . . . ." *Bryan v. Eichenwald*, 191 F.R.D. 650, 652 (D. Kan. 2000)

[2] Plaintiff does not specifically move the court for the entry of its version of the protective order. However, should the Court determine a protective order is appropriate, Plaintiff seeks to have his version of the protective order entered. In this regard, Plaintiff must show good cause for the entry of his version of the order. The party seeking a protective order has the burden to show good cause for it. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan.1996). As discussed below, Plaintiff does not demonstrate good cause for the entry of his version of the order.

The issue before the Court is whether I-Flow has demonstrated good cause for its Protective Order. I-Flow claims that a protective order is necessary to protect its confidential information from broad dissemination proposed by Plaintiff. Plaintiff claims that I-Flow does not show good cause for protection, that the documents at issue are not trade secrets entitled to protection, and I-Flow's proposed order violates public policy. For the reasons set forth below, the Court finds that I-Flow has demonstrated good cause for a protective order and dissemination of its confidential documents as proposed by Plaintiff would tangibly prejudice I-Flow's substantial rights. Therefore, the Court will grant I-Flow's Motion for Protective Order and enter its version of the Stipulated Qualified Protective Order [Doc. 51].

## RELEVANT LAW

Whether to enter a protective order rests within the sound discretion of the court. *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir.1995). Fed.R.Civ.P. 26(c) provides that the court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective order has the burden to show good cause for it. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan.1996). To establish good cause, that party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). To limit the dissemination of items and information received in discovery, the movant must show "that disclosure of the information will result in a 'clearly defined and very serious injury.'" See *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D.Kan.1995) (quoting *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 480 (S.D.N.Y.1982)).

ANALYSIS

In this case, I-Flow has demonstrated good cause because disclosure of its confidential information beyond individuals involved in this case would cause it serious harm by tangibly prejudicing its substantial rights. I-Flow limits the protective order to specific types of documents, including "trade secret or confidential research, development, competitive, proprietary or commercial information and may include financial information, and information relating to ownership or control of any non-public company, and any information protected from disclosure by any privacy or other law or governmental regulation, as well as any other type of information given confidential status by the Court." [Doc. 51, pp. 1 – 2.] These types of documents are subject to a protective order.  See, e.g. *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660 (D.Kan.1996) (relevant proprietary and confidential information and trade secrets may be subject to a protective order). Plaintiff agreed to this provision of the Protective Order. [Doc. 55-1, p. 2; Doc. 53-1, p. 1 – 2.] In this regard, Plaintiff's argument that I-Flow's documents are not entitled to protection [Doc. 53, pp. 5 – 6] is unavailing. I-Flow further demonstrates good cause to enter its version of the Protective Order because disclosure of its confidential information beyond individuals involved in this case would cause it serious harm by tangibly prejudicing its substantial rights.

This Court addressed the issue of information-sharing in a protective order in *Bertetto v. Eon Labs, Inc.*, CIV. 06-1136 JCH/ACT, 2008 WL 2522571 (D.N.M. May 29, 2008).  *Bertetto* is substantially similar to this case and, therefore, applicable.  In *Bertetto*, the sharing provision at issue would have enabled plaintiffs "to share discovery obtained from Defendants with any other attorneys that sued Defendants anywhere in the United States for injuries allegedly caused by the medication manufactured by Defendants." *Id.*, at *1.  Defendants in *Bertetto* alleged the sharing

provision was too broad to allow them to protect their confidential information and they would be harmed because it would enable plaintiffs in other cases to obtain defendants' confidential business information without a court's order or supervision and without notification to defendants. *Id*.

In *Bertetto*, the court found the provision would tangibly prejudice substantial rights of defendants for several reasons. First, the court would be abdicating its role in approving future discovery as well as potentially usurping the court's role in managing discovery in a collateral case. *Bertetto*, at *2. The *Bertetto* court explained, "'questions of the discoverability in the [collateral] litigation of the materials discovered in [this] litigation are, of course, for the [collateral] courts.'" *Bertetto*, at *3 (quoting *United Nuclear Corp. v. Cranford Ins. Co*., 905 F.2d 1424, 1428 (10th Cir. 1990)). "A collateral suit could be dismissed for any number of reasons prior to discovery, or the full extent of the information given to the current Plaintiffs might go to issues not relevant in the collateral suit, and therefore would not be available to the collateral plaintiffs if they had to go through a standard discovery process." *Bertetto,* at *2. Second, "the [sharing] provision would result in dissemination of Defendants' confidential information being removed from any meaningful court oversight and left completely in the hands of the Plaintiffs' attorneys, and such information would be available to any plaintiff who simply filed a suit against Defendants, regardless of the suit's merits or the relevance of the materials to the suit . . . ." *Id*. Finally, "a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." *Id.* at *3, (quoting *United Nuclear*, 905 F.3d at 1428). Thus, this Court in *Bertetto* found that granting discovery of confidential materials to as-yet unnamed plaintiffs, without court supervision would directly contradict Tenth Circuit law. *Bertetto*, at *3.

In this case, as in *Bertetto*, Section 10(h) proposed by Plaintiff is too broad to protect I-Flow's confidential business interests. Indeed, Section 10(h) is broader than the sharing provision stricken by the Court in *Bertetto* because it is not limited to pending litigation. As I-Flow points out, the language of Section 10(h) is broad enough to include dissemination to counsel who merely have potential "actions." [Doc. 50, p. 5, FN2.] Accordingly, Section 10(h) would allow other counsel, including those who have not yet filed lawsuits, to obtain access to confidential information without any assessment of the merits or sustainability of their claims.[3] It could also allow counsel outside of the court's jurisdiction to obtain I-Flow's confidential information resulting in dissemination of confidential information being removed from any meaningful court oversight. Further, Section 10(h) would allow the dissemination of I-Flow's confidential information without I-Flow's knowledge, preventing any meaningful objections to its production in a collateral case. The Court finds that, in accordance with *Bertetto*, Section 10(h) proposed by Plaintiff would tangibly prejudice I-Flow's substantial rights. Since the broad dissemination of I-Flow's confidential documents would tangibly prejudice I-Flow's substantial rights, there is good cause to enter the protective order.

## CONCLUSION

Since I-Flow has demonstrated good cause for the entry of the Protective Order I-Flow's Motion for Entry of Protective Order [Doc. 50] is GRANTED and the Court will enter the Stipulated Qualified Protective Order [Doc. 51] proposed by I-Flow.

---

[3] Plaintiff cites several cases in support of his contention that the majority of courts encourage sharing provisions. [Doc. 53, pp. 7 – 8.] The cases cited do not assist Plaintiff in this case. *Krahling v. Executive Life Ins. Co.*, 1998-NMCA-071, 125 N.M. 228, 959 P.2d 562 and *Pincheira v. Allstate Ins. Co.,* 2008-NMSC-049, 144 N.M. 601, 190 P.3d 322 are New Mexico State cases interpreting the New Mexico Rules of Civil Procedure not applicable in this Court. *Ward v. Ford Motor Co*., 93 F.R.D. 579 (D. Colo. 1982), is distinguishable because in that case, plaintiffs sought to share information only with attorneys who represented other plaintiffs in pending litigation and plaintiffs' counsel agreed to not share trade secrets. *Id*., at 580. The other cases cited by Plaintiff are from jurisdictions outside of the Tenth Circuit.

**IT IS SO ORDERED:**

_____
Alan C. Torgerson
United States Magistrate Judge