IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ADAM LOOMIS,**

      **Plaintiff,**

      **vs.**                                                               Civ. No. 11-1007 JCH/ACT

**I-FLOW, LLC,**
**I-FLOW CORPORATION,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Compel I-Flow, LLC to Respond in Full to Plaintiff's Second Requests for Production of Documents [Doc. 75], filed May 17, 2013 ("Motion"). Defendants filed their Response [Doc. 77] on June 3, 2013 ("Response"). No reply has been filed.

The issue before the Court is whether I-Flow should be compelled to produce the settlement agreements from other numerous product liability lawsuits filed against I-Flow involving the use of the I-Flow pain pump. Plaintiff argues they are potentially relevant with respect to issues of notice; witness bias, prejudice and credibility; Plaintiff's punitive damages; and I-Flow's affirmative defenses. [Doc. 75 at 2.] Defendant argues that the settlement agreements are confidential, but more significantly that I-Flow did not enter into any settlement agreements involving chondrolysis for any case prior to the date of Plaintiff's surgery thereby making their production irrelevant to what I-Flow knew at the time of Plaintiff's surgery. [Doc. 77 at 2.] For the reasons set forth below, the Court finds that Plaintiff's Motion is not well taken and it will be DENIED.

**BACKGROUND**

This is a products liability case that arises from Plaintiff's claim that he suffered chondrolysis, the rapid and global loss of cartilage in his shoulder joint, when he used an I-Flow "Painbuster" pain pump after undergoing anthroscopic shoulder surgery in October 2006. [Doc. 75 at 1.] Plaintiff alleges that I-Flow had knowledge that the pain pump was causing chondrolysis, but I-Flow failed to notify surgeons of the risk and danger. [Id.] Plaintiff alleges that the pain pump was defective and that I-Flow was negligent in marketing the pump for an unapproved usage and for failing to provide proper warnings. [Id. at 2.] Plaintiff's lawsuit against I-Flow is similar to numerous other lawsuits filed throughout the United States against I-Flow involving the identical defect and damage claims. [Id.] To date, I-Flow has settled well over 100 of these lawsuits. [Id.]

**RELEVANT LAW**

A.    **Scope and Relevance of Discovery**

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Federal courts have held that the scope of discovery under Rule 26 is deliberately broad. "The way is now clear, consistent with recognized privileges, for the parties obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002)(unpublished). *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. 2002) (Knapp, J.) ("Discovery, however, is not intended to be a fishing expedition, bur rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.")(citation omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d at 1520.

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 223 (N.D.Ill. 1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. Courts have also recognized that "[t]he legal tenet that relevancy in the discovery content is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D.Kan. 2003). Conversely, when relevancy is not apparent on the face of the interrogatory or

3

request, the party seeking the discovery has the burden to show the relevancy of the information or documents sought. *Id.*

Rule 26 was amended in 2000 to state that the material requested must be "relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

### B. Requests for Production

Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If an objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b).

C.     **Motions to Compel**

Rule 37 provides enforcement mechanisms for Rules 33 and 34.  Federal Rule of Civil Procedure 37(a)(1) provides in pertinent part, "[A] party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempt to confer with the person or party failing to make disclosure or discovery."  Additionally, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond.  See Fed. R. Civ. P. 37(a)(2)(B).  "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3).

D.     **Settlement Agreements**

Confidentiality is not a bar to the discovery of a settlement agreement, although a confidentiality clause may justify seeking Court direction before disclosing the settlement agreement. *Transportation Alliance Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 4964032, *1 (N.D. Okla. Oct. 19, 2011)(citing *High Point SAIL v. Spring Nextel Corp.*, 2011 WL 3241432 (D.Kan. July 29, 2011).

The Tenth Circuit has not recognized a "settlement privilege" under Rule 408.  *Zlotogura v. Progressive Direct Insurance Company*, 2013 WL 1855879, *2 (W.D. Okla. May 1, 2013)(citing *Bird v. Regents of N.M. State Univ.*, Civ. No. 08-851 BB/LAM, 2010 WL 8973917, at *4 (D.N.M. June 15, 2010)).  Rule 408 "precludes only the admissibility of settlement negotiations, not the discoverability of such evidence."  *Id.*  Many federal courts have concluded settlement agreements are discoverable if relevant.  *Simmons Foods, Inc. v. Willis*, 2000 WL 204270 (D. Kan. Feb. 8, 2000)(citing *Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 79 (S.D.W. Va. 1996)).

## ANALYSIS

### Request for Production No. 1

All settlement agreements for any and all claims and lawsuits made or filed against you in which a consumer alleged to have suffered joint injuries, including chondrolysis in the shoulder joint, from the use of any continuous infusion therapy pump and/or any pain pump designed, manufactured, marketed or sold by you.

### RESPONSE

I-Flow objects to this request for production because any settlement agreements entered into have been confidential, and production of the agreements or disclosure of their terms would violate the terms of the settlement agreements. I-Flow further objects to this request as it is overly broad, vague and ambiguous as to the phrase "suffered joint injures," which is subject to multiple meanings and contexts. I-Flow also objects to this request for production because it is unduly broad and burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, is not limited to the relevant timeframe and seeks information not related to the Plaintiff, Plaintiff's surgery, Plaintiff's surgeon or to the specific type of shoulder surgery Plaintiff underwent, or to the specific ON-Q® PainBuster® allegedly used in Plaintiff's surgery. Further, this request seeks information that is confidential and not available to the general public. I-Flow also objects to the extent this request calls for the production of information that is protected by the attorney-client privilege and work product doctrine.

In asking this Court to compel I-Flow to produce its settlement agreements, Plaintiff argues generally that numerous courts have ordered the production of prior settlement agreements on various grounds. Plaintiff argues specifically that (1) the settlement agreements are potentially relevant to I-Flow's notice and affirmative defenses; (2) the settlement agreements are potentially relevant to witness bias, prejudice and credibility; (3) Rule 408 does not preclude discovery of the settlement agreements and does not bar introduction of prior settlement agreements in this case; and (4) confidentiality agreements do not shield the agreements from discovery and the Protective Order in place avoids any harm from their production.

As an initial matter, the Court finds that Plaintiff's request with respect to "any and all claims and lawsuits made or filed against you in which a consumer alleged to have suffered joint injuries" is overly broad and vague. With respect to Plaintiff's request for the settlement agreements regarding claims and lawsuits made against I-Flow in which a consumer alleged to have suffered chondrolysis in the shoulder joint from the use of a continuous infusion therapy pump, the Court agrees generally that Rule 408 would not preclude the discovery of settlement agreements and that confidentiality is not a bar to the discovery of settlement agreements. However, the threshold question is whether the requested disclosure is relevant to this lawsuit. For the reasons stated below, the Court finds that the settlements agreements sought by Plaintiff are not relevant to this lawsuit and are therefore not discoverable.

Plaintiff argues that the production of the settlement agreements in the other numerous product liability lawsuits filed against I-Flow is relevant because their production will undermine I-Flow's defense that it had no knowledge of a connection between its pain pumps and chondrolysis. Plaintiff states that proving I-Flow's knowledge is relevant to establishing both their claim of punitive damages and challenging the credibility of I-Flow's corporate representative and expert witness testimony. In support of his argument, Plaintiff cites to a number of cases in which courts have allowed the discovery of settlement agreements to prove a defendant was on notice and for the purpose of evaluating witness credibility.

Defendants contend that the first lawsuit filed against I-Flow claiming that a continuous infusion therapy device caused chondrolysis was on or about July 13, 2007 – eight months after Plaintiff's arthroscopic shoulder surgery. [Doc. 77-1, ¶ 4.] Defendants further contend that I-Flow did not enter into any settlement agreements with any plaintiff that claimed to have developed glenohumeral chondrolysis prior to the date of Plaintiff's surgery in October 2006.

7

[Doc. 77-1, ¶ 5.] Based on these facts, Defendants argue that "[a]s a matter of simple logic, evidence that relates to events or information that occurred *after the date of Plaintiff's surgery* is necessarily irrelevant to what I-Flow knew *at the time of Plaintiff's surgery*." [Doc. 77-2.] (Emphasis in original.)  The Court agrees.

Here, the *first* of the other numerous product liability lawsuits filed against I-Flow involving the use of the I-Flow pain pump and chondrolysis did not occur until *eight months after* Plaintiff's surgery.  Logically, the settlement agreements entered into by I-Flow with respect to those lawsuits occurred sometime thereafter. Because any similar lawsuits filed or settlement agreements entered into by I-Flow occurred *after* the date of Plaintiff's surgery, the settlement agreements are not reasonably calculated to lead to the discovery of evidence that relates to I-Flow's knowledge in October 2006.

Furthermore, the cases cited to by Plaintiff to support his position are distinguishable from the facts in this case.  *In Breuer Electric Manufacturing Co., v. Toronado Systems of America, Inc*., 687 F.2d 182 (7th Cir. 1981), the defendants moved to vacate the court's entry of default judgment and argued, *inter alia,* that they were unaware of issues involved in their case until the suit was initiated.  *Id*. at 185.  The court allowed evidence regarding the settlement negotiations engaged in by the parties prior to suit being filed in order to rebut defendants' assertion.  *Id.*  In *United States v. Austin*, 54 F.3d 394 (7th Cir. 1995), the defendant was bound by the terms of a settlement agreement he entered into following a Federal Trade Commission investigation in which it was determined that he was misrepresenting the sale of artwork.  *Id.* at 398.  When the defendant failed to abide by the terms of the settlement agreement and the government initiated criminal proceedings against him, the court allowed the settlement agreement as evidence to show that the defendant was on notice regarding his agreement with

the FTC regarding his failure to abide by its terms. *Id*. at 400. Finally, in *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987), the court allowed a prior settlement agreement involving police brutality in a civil rights action because it bore directly upon the question of municipal liability for the assault on the plaintiff. *Id.* at 1401. In each of these cases, the defendant had actual knowledge of the settlement agreement in question at the time it engaged in the alleged wrongful conduct. In the instant case, Plaintiff's surgery occurred several months before any lawsuits had been filed or settlement agreements entered. Therefore, it is impossible for Plaintiff to show based on the settlement agreements that I-Flow had knowledge that its continuous infusion therapy device caused chondrolysis at the time of Plaintiff's surgery because they did not exist. Because the settlement agreements are irrelevant to the issue of I-Flow's knowledge, they are not discoverable.

Likewise, the settlement agreements are not relevant for the purpose of attacking witness credibility or establishing bias. Again, the cases cited by Plaintiff are distinguishable from the facts of this case. In *DIRECTTV, Inc. v. Puccinnelli*, 224 F.R.D. 677 (D.Kan. 2004), plaintiff had entered into several settlement agreements with certain individuals "that required [them] to cooperate with DIRECTV's campaign in exchange for leniency." *Id.* at 684. The court allowed the settlement agreements into evidence because they could establish the bias or prejudice of these individuals who would be testifying at trial. *Id*. In *Cleveland Const. Inc. v. Whitehouse Hotel Ltd. Partnership*, 2004 WL 385052 (E.D. La. 2004), the plaintiff sought admission of a settlement agreement previously entered into by the defendant/counterclaimant because there was evidence that the defendant had already recovered for the claims he was now raising in his counterclaim. Id. at *1. The court determined that the credibility of defendant's counterclaim against the plaintiff was at issue and therefore allowed admission of the previous settlement

agreement.  Finally, in *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corporation, Inc*., 1998 WL 186705 (E.D. La. 1998), the defendant sought evidence of any settlement agreement between the plaintiffs and a third party who was expected to testify at trial.  *Id.* at *3.  The court stated that the discovery of settlement agreements is routinely permitted to evaluate possible bias, interest and credibility for a party testifying.  *Id.*  Thus, in *DIRECTTV, Inc*., and *Westside-Marrero Jeep Eagle, Inc*., the court was concerned that individuals had been induced to give favorable testimony on behalf of the party with whom they had settled, and in *Cleveland Construction, Inc*., the court needed to be sure that defendant was not attempting to receive a second recovery on claims already made.  This is not the case here.  In the instant case, Plaintiff wants the Court to allow production of the settlement agreements in order to demonstrate that I-Flow knew its continuous infusion therapy device caused chondrolysis, thereby making its corporate representative and expert witness testimony to the contrary not credible.  For the reasons stated above, Plaintiff's argument fails.  Because the settlement agreements did not exist at the time of Plaintiff's surgery, it is impossible for Plaintiff to show based on the settlement agreements that I-Flow had knowledge that its continuous infusion therapy device caused chondrolysis.  The settlement agreements are therefore irrelevant to the issue of corporate representative or expert witness credibility and bias and are not discoverable.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel I-Flow, LLC to Respond in Full to Plaintiff's Second Requests for Production of Documents [Doc. 75] is **DENIED.**

**IT IS SO ORDERED.**

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge**